Slip Op. 02-48

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: RICHARD K. EATON**

|  | |
|---|---|
| **KAO HSING CHANG IRON & STEEL CORPORATION**, | : |
| Plaintiff, | : |
| and | : |
| **ACI CHEMICALS, INC., and YU DIN STEEL COMPANY, LTD.**, | : |
| Plaintiff-Intervenors, | : |
| v. | : **Consol. Court No. 00-01-00026** |
| **UNITED STATES**, | : |
| Defendant, | : |
| and | : |
| **WHEATLAND TUBE COMPANY**, | : |
| Defendant-Intervenor. | : |

Plaintiff foreign exporter brought action contesting final results of administrative review of antidumping order covering carbon steel pipe from Taiwan. United States Court of International Trade, Eaton, J. held: United States Department of Commerce's ("Commerce") determination that use of facts available was warranted as to Plaintiff was not supported by substantial evidence on the record because, contrary to Commerce's findings, Plaintiff sought clarification of questionnaire instructions, notified Commerce of difficulties in submitting requested information, and timely submitted responses.

[Antidumping determination remanded to Commerce.]

May 30, 2002

Ablondi, Foster, Sobin & Davidow, P.C.[1] (F. David Foster and Kristen S. Smith), for Plaintiff.

Holland & Knight, LLP (Frederick P. Waite and Kimberly R. Young), for Plaintiff-Intervenors.

Robert D. McCallum, Jr., Deputy Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Stephen M. DeLuca, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for Defendant.

Schagrin Associates (Roger B. Schagrin, Nicholas A. Kessler, Andrew B. Knapp, Brian E. McGill, and Roger Banks), for Defendant-Intervenor.

**OPINION**

EATON, Judge:  This matter is before the court on the motion of Plaintiff Kao Hsing Chang Iron & Steel Corporation ("KHC") for judgment upon the agency record pursuant to USCIT R. 56.2.  KHC contests the results of the United States Department of Commerce's ("Commerce") sixth administrative review of the antidumping order[2] covering carbon steel pipe

---

[1]     Ablondi, Foster, Sobin & Davidow, P.C., merged with Miller & Chevalier, Chartered, in July of 2001.

[2]     See Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan: Antidumping Duty Order, 49 Fed. Reg. 19,369 (May 7, 1984).  By this order KHC's weighted average antidumping duty margin was calculated as 9.7 percent for the subject merchandise.  Id. at 5,311.  Administrative reviews of this order were conducted for the periods of:  1983–84, see 51 Fed. Reg. 43,946 (Dec. 5, 1986) (final results), amended by 53 Fed. Reg. 51,128 (Dec. 20, 1988); 1985–86, see 53 Fed. Reg. 41,218 (Oct. 20, 1988) (final results), amended by 54 Fed. Reg. 1,752 (Jan. 17, 1989); 1986–87, see 54 Fed. Reg. 46,432 (Nov. 3, 1989) (final results); 1987–88, see 56 Fed. Reg. 8,741 (Mar. 1, 1991) (final results); and 1995–96, see 62 Fed. Reg. 52,971 (Oct. 10, 1997) (final results).  KHC's margin was reviewed for the periods of 1985–86 (finding zero percent margin) and 1986–87 (adopting 1985–86 margin due to no shipments during POR).  In addition, Commerce conducted an expedited sunset review of the subject merchandise, in which it noted KHC's margin, as calculated in the antidumping order, was 9.7

(continued...)

from Taiwan contained in <u>Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan: Final Results of Antidumping Duty Administrative Review</u>, 64 Fed. Reg. 69,488 (Dec. 13, 1999) ("<u>Final Results</u>"), <u>amended by</u> <u>Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan; Amended Final Results of Antidumping Duty Administrative Review</u>, 65 Fed. Reg. 5,310 (Feb. 3, 2000) ("<u>Am. Final Results</u>"). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1994) and 19 U.S.C. § 1516a(a)(2)(A)(i)(I) (1994). Where a party challenges the findings of an antidumping review the court will hold unlawful "any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i). For the reasons set forth below, the court remands this matter to Commerce with instructions to conduct further proceedings in conformity with this opinion.

## BACKGROUND

On May 29, 1998, at the request of Allied Tube & Conduit Corp., Wheatland Tube Company, Sawhill Tubular Division of Armco, Inc., and Laclede Steel Co. (jointly "Petitioners"), Commerce initiated an administrative review of the order covering the subject imports for the period of May 1, 1997, through April 30, 1998. <u>See</u> <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part</u>, 63 Fed. Reg. 35,188 (June 29, 1998). As part of its investigation, Commerce issued its standard

---

[2] (...continued)
percent. <u>See</u> <u>Final Results of Expedited Sunset Review: Small Diameter Carbon Steel Pipes and Tubes from Taiwan</u>, 64 Fed. Reg. 67,873, 67,875–76 (December 3, 1999).

questionnaire to KHC.[3] (See questionnaire of 7/10/98 ("Questionnaire"), Pub. R. Doc. 5, Attach.) Although initially not required to respond to questions concerning costs of production as set out in section D of the Questionnaire, Commerce notified KHC that it might be instructed to do so in the future. (Letter from Commerce to law firm of Dickstein Shapiro & Morin of 7/10/98, Pub. R. Doc. 5 at 2.) KHC responded to section A of the Questionnaire on August 7, 1998, and sections B and C on September 4, 1998. (Letters from law firm of Ablondi, Foster, Sobin & Davidow ("AFS&D") to Commerce of 9/4/98, Pub. R. Docs. 20, 32.[4])

Thereafter, in response to Petitioners' further allegations that "KHC made home market sales below the cost of production . . . during the POR," Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan: Prelim. Results of Antidumping Duty Admin. Review and Partial Rescission of Review, 64 Fed. Reg. 30,306, 30,307 (June 7, 1999) ("Prelim. Results"), Commerce "initiated an investigation of sales below cost," id., and instructed KHC to respond to section D of the Questionnaire. (Letter from Commerce to AFS&D of 10/20/98, Pub. R. Doc. 46.) In connection with this request, Commerce provided KHC with general instructions for answering the questions found in section D relating to cost of production ("COP")[5] and

---

[3] The relevant questionnaire sections are: A (general information); B (comparison market sales–sales in the home market or to third countries); C (sales to the United States); and D (cost of production/constructed value).

[4] The law firm of Dickstein Shapiro & Morin withdrew as attorney of record for KHC on July 24, 1998 (Pub. R. Doc. 13), after which the law firm of Ablondi, Foster, Sobin & Davidow entered its appearance on July 28, 1998 (Pub. R. Doc. 14).

[5] "Cost of production" was defined as "the total model-specific cost of the foreign like product sold by your company in the foreign market." (Questionnaire section D, Pub. R.

(continued...)

constructed value ("CV").[6] These instructions provided guidance as to how various computer

data fields were to be labeled and completed so that COP and CV could be calculated.

(Questionnaire section D, Pub. R. Doc. 5, Attach. at D-10–19.) For COP and CV data,

Commerce directed KHC to report "the quantity produced during the cost calculation period" in a

data field labeled "PRODQTY" for each model identified by an individual model control number

("CONNUM"). (See id. at D-13, 19 (emphasis added).) KHC filed its section D response on

December 4, 1998, after asking for and receiving an extension of time to do so. (See letters from

Commerce to AFS&D of 11/17/98, Pub. R. Doc. 53A (granting extension of time to Dec. 4,

1998), and 12/7/98, Pub. R. Doc. 56 (referencing filing of preliminary business proprietary

version on December 4, 1998).)

Commerce, after reviewing KHC's section D submission and receiving comments from

interested parties thereon, sent a supplemental questionnaire to KHC. (See letter from

Commerce to AFS&D of 1/21/99, Pub. R. Doc. 66.) Among other things, Commerce instructed

KHC to, "As previously requested, report the quantity produced during the cost calculation

period in the field labeled 'PRODQTY' within your COP and CV databases." (Supplemental

questionnaire of 1/21/99 ("First Supplemental Questionnaire"), Pub. R. Doc. 66, Attach. at ¶ 47

(emphasis added).) Commerce did not, however, more specifically detail the nature of the

---

[5]     (...continued)
Doc. 5, Attach. at D-1.)

[6]     "Constructed value" was defined as "the total model-specific cost of the subject
merchandise sold by your company to the U.S. market, plus an amount for profit."
(Questionnaire section D, Pub. R. Doc. 5, Attach. at D-1.)

deficiency. (<u>See generally</u> First Supplemental Questionnaire, Pub. R. Doc. 66, Attach.) KHC

timely filed its response to the First Supplemental Questionnaire (<u>see</u> letter from AFS&D to

Commerce of 2/16/99, Conf. R. Doc. 16) after asking for and receiving an extension of time (<u>see</u>

letter from Commerce to AFS&D of 2/3/99, Pub. R. Doc. 70 (granting extension of time to

February 16, 1999)). In this response, KHC stated: "As requested, KHC is reporting the <u>quantity</u>

<u>produced during the cost calculation period</u> in the field labeled 'PRODQTY' within its revised

COP and CV databases . . . ." (First Supplemental Questionnaire Resp., Pub. R. Doc. 77, Attach.

at 43 (emphasis added).)


      After receiving and reviewing the First Supplemental Questionnaire Response,

Commerce notified KHC that the information provided therein was deficient, and directed it to

complete another supplemental questionnaire. (Letter from Commerce to AFS&D of 3/16/99,

Pub. R. Doc. 86.) In this communication, for the first time, Commerce clearly stated that KHC

had not provided requested information:

> For a large number of CONNUMs, including CONNUMs for
> which sales are reported in the sales response, data for the field
> "PRODQTY" is not provided. As requested in our original and
> supplemental questionnaire, report the <u>quantity produced during</u>
> <u>the cost calculation period</u> in the field labeled "PRODQTY" within
> your COP and CV databases.

(Supplemental questionnaire of 3/16/99 ("Second Supplemental Questionnaire"), Pub. R. Doc.

86, Attach. at ¶ 10(e) (emphasis added).)


      Before submitting its response, KHC sought to address the issues raised by the Second

Supplemental Questionnaire.  To this end KHC contacted Commerce and, on March 23, 1999, a

meeting was held between counsel for KHC and Commerce officials.[7]  (See affidavit of F. David

Foster, Pl.'s Mem. Supp. Mot. J. Agency R., Attach. 5 ("Foster Aff."); affidavit of Johnny Chiu,

Pl.'s Mem. Supp. Mot. J. Agency R., Attach. 6.)  At this meeting counsel for KHC stated that

KHC's sales during the period of review included merchandise produced both prior to the period

of review—i.e. from inventory—and during the period of review.  (Foster Aff. at ¶ 4.)  KHC's

counsel explained that, since Commerce requested information only for quantities produced

during the cost calculation period, no production quantity data had been provided for

merchandise sold from inventory.  (Id.)  KHC's counsel suggested that, with respect to data for

merchandise sold from inventory, "costs reported for the product most similar to a product not

produced during the review period could be used as surrogate costs for the product not produced"

as this "was normal ITA practice in situations such as KHC's."  (Id. at ¶ 5.)  Commerce did not

consent to KHC's proposed method but, instead, indicated that the use of surrogate cost data

would depend on a number of factors, including the relative similarity of the surrogate

merchandise and estimated value of U.S. sales involved.  (Id. at ¶ 6.)  At no point did Commerce

state, however, that KHC's use of such methodology was unacceptable or, alternatively, suggest

any other approach.  (Id. at ¶ 7.)

---

[7]        A memorialization of this meeting was not initially included as part the
administrative record.  The court granted Plaintiff's motion to include two affidavits in the record
describing the events that transpired during that meeting.  See Kao Hsing Chang Iron & Steel
Corp. v. United States, 25 CIT __, Slip Op. 01-51 (Apr. 19, 2001) (granting Plaintiff's motion to
amend administrative record).  There is no dispute that these affidavits, now part of the
administrative record, accurately reflect the substance of that meeting.  Id., 25 CIT at __, Slip.
Op. 01-51 at 2.

After this meeting, KHC requested and was granted an extension of time to respond to the

Second Supplemental Questionnaire. (See letter from Commerce to AFS&D of 4/8/99, Pub. R.

Doc. 102 (granting extension of time to April 12, 1999).) KHC then timely filed its response to

the Second Supplemental Questionnaire (Second Supplemental Questionnaire Resp. of 4/12/99,

Pub. R. Doc. 105, Attach) explaining that it had:

> reported the quantity produced during the cost calculation period in
> the field labeled "PRODQTY" in the COP and CV databases. For
> some U.S. and home market sales (about 5% of the sales records in
> both the U.S. and home market data sets), there was no production
> during the POR; sales were from inventory. Exhibit 6 hereto sets
> forth those product numbers/CONNUMS where this is the case,
> and indicates for each such case the control number/CONNUM
> which is closest in characteristics for which production did occur,
> and whose costs KHC believes closely represents the costs of such
> product if it had been produced.

(Id., Pub. R. Doc. 105, Attach. at 11.) Exhibit 6[8] was a printed chart with handwritten notations

of CONNUMs with "U.S. sales with no POR production, and closest product with production,"

and CONNUMs with "Home market sales with no POR production, and closest product with

production." (See Second Supplemental Questionnaire Resp., Conf. R. Doc. 24, Attach. at Ex.

6.)[9] After filing the Second Supplemental Questionnaire Response KHC received no further

inquiries or requests for information from Commerce. (Pl.'s Mem. Supp. Mot. J. Agency R. at

6.)

---

[8]     Exhibit 6 as filed on April 12, 1999, contained information deemed incorrect by
KHC and was subsequently replaced. (See letter from AFS&D to Commerce of 4/13/99, Pub. R.
Doc. 104 at 2.)

[9]     The chart, which cross-referenced CONNUMs of merchandise sold from
inventory with CONNUMs of merchandise produced during the period of review, did not
provide specific production quantity data for CONNUMs sold from inventory.

Commerce then published the Preliminary Results. Therein, it explained that the use of facts available as to certain merchandise was warranted because KHC "failed to provide any costs for certain models," Preliminary Results, 64 Fed. Reg. at 30,308, and "failed to provide any constructed value data for certain models . . . ." Id. Therefore, for both cost of production and constructed value Commerce used the "highest average cost for the same category of product." Id.

On December 13, 1999, Commerce published the Final Results. Therein, it explained that "[w]here KHC failed to provide cost data, [Commerce] used the highest average costs of models for which KHC did provide data. The facts . . . used constitute partial adverse facts available, and are also the least adverse facts available on the record." Final Results, 64 Fed. Reg. at 69,489. Commerce explained that the use of facts available was warranted because:

> KHC withheld information requested by the Department, then belatedly offered different information, which did not fulfill the request, in an unacceptable format. . . . KHC did not consult the Department on this matter, and did not explain its omission of quantity or cost data until its April 13, 1999 addendum to its April 12, 1999 supplemental response, where it mentioned in passing that the models were not produced during the POR.

Id. (emphasis added). In addition, Commerce found that:

> KHC chose to ignore both the instructions in the questionnaire . . . and basic statutory guidelines: [19 U.S.C. § 1677m(c)(1)] requires that an interested party promptly notify the Department if it is unable to submit information in the form and manner requested, and that it provide a "full explanation and suggested alternate forms" in which it is able to provide the information. KHC provided no such notification or explanation.

Id. at 69,490. Commerce explained that it used adverse inferences because:

the facts we used are only partial adverse facts available and are the least adverse verified facts available on the record which would not reward non-compliance. Rather than applying the highest calculated margin for the sales with unreported cost data, we simply inserted the highest costs in order to complete the costs test and leave the price-to-price analysis intact. We have relied upon KHC's own verified data as our source of facts available. Use of costs other than those we have used, such as KHC's overall, non-product specific average costs, could reward KHC for failure to fully cooperate in this review because use of such data could potentially result in a lower margin than would have resulted from use of KHC's actual costs. Our application of partial adverse facts available in this manner is consistent with established practice because it is based on verified data and is sufficiently adverse to induce KHC's cooperation in future reviews.

Id. After correcting certain ministerial errors, Commerce set KHC's antidumping duty margin at 24.80 percent. Am. Final Results, 65 Fed. Reg. at 5,311.

## DISCUSSION

KHC raises several issues in support of its motion. First, it argues that Commerce improperly resorted to the use of facts available because Commerce did not provide KHC with an adequate opportunity to correct deficiencies in its filings. Next, KHC contends that, even if the use of facts available were warranted, Commerce improperly resorted to the use of adverse inferences because KHC acted to the best of its ability to comply with Commerce's requests. Finally, KHC argues that the adverse inferences selected by Commerce from facts available were not in accordance with law because they were punitive in nature.[10]

---

[10]    Plaintiff-Intervenors contend that since Yu Din's antidumping margin was "linked" to KHC's, if KHC's margin is adjusted then Yu Din's must be as well. (See Pl.-Intervenors' Mem. Supp. Mot. J. Agency R. at 2.) Yu Din's margin was "linked" to KHC's because it "did not respond to [Commerce's] requests for information and [was] assigned, as

(continued...)

The United States ("Government"), on behalf of Commerce, claims that the Final Results are supported by substantial evidence on the record and otherwise in accordance with law. The Government argues that the use of partial facts available was warranted because KHC failed to submit COP and CV data for several models and, in addition, that the data KHC did submit was properly rejected by Commerce because it was not usable. The Government further argues that Commerce's selection of adverse inferences was proper since Commerce is allowed great discretion in selecting such inferences from facts otherwise available, and here those inferences selected were not punitive in nature but, rather, furthered the interests of the antidumping laws.

In order to be found proper, Commerce's findings must be supported by substantial evidence. See 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938); Daewoo Elecs. Ltd. v. United States, 6 F.3d 1511, 1520 (Fed. Cir. 1993). In reviewing an agency's findings the court must determine "whether the evidence and reasonable inferences from the record support the [agency's] finding." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir.

---

[10]    (...continued)
facts available, the highest rate in any segment of this proceeding . . . ," see Am. Final Results, 65 Fed. Reg. at 5,310, and KHC's margin was the highest calculated rate. Id. at 5,311. The Government agrees with Plaintiff-Intervenors, stating that "in the event this Court remand[s] KHC's action to Commerce to redetermine KHC's margin and KHC's current margin was ultimately discredited, that Yu Din's margin should be reconsidered as well because it has challenged the facts available margin in the current review. However, Commerce need . . . revise Yu Din's margin only if KHC's margin is disqualified in a final court determination following a remand in KHC's action." (Def.'s Mem. Opp'n to Pl.-Intervenor's Mem. Supp. Mot. J. Agency R. at 3.)

1984). Finally, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966); Daewoo, 6 F.3d at 1520 ("The questions is whether the record adequately supports the decision of the [agency], not whether some other inference could reasonably be drawn."). Here, Commerce's conclusions supporting its use of facts available was warranted are not supported by substantial evidence.[11]

First, the conclusion that KHC "withheld information requested by the Department, then belatedly offered different information, which did not fulfill the request, in an unacceptable format," Final Results, 64 Fed. Reg. at 69,489, is not supported by the record. The information KHC allegedly "withheld" is the PRODQTY data for CONNUMs sold from inventory. The clear wording of the questionnaire instructions, however, directed KHC to supply PRODQTY data for CONNUMs produced during the cost calculation period. While it may have been Commerce's intention to request PRODQTY data for all CONNUMs sold during the cost calculation period, this was not made clear to KHC until it received the Second Supplemental Questionnaire, thus prompting KHC to request the meeting that was held on March 23, 1999. In addition, KHC did not "belatedly" offer this information to Commerce. KHC informed Commerce of the difficulties it was having reconstructing the PRODQTY data for CONNUMs sold from inventory nearly three weeks prior to the April 12 deadline for the submission of the

---

[11] It is unclear whether Commerce based its use of facts available on KHC's alleged withholding of information pursuant to 19 U.S.C. § 1677e(a)(2)(A), or failure to provide information pursuant to 19 U.S.C. § 1677e(a)(2)(B). Whatever the basis, however, the court finds Commerce's conclusions are not supported by the record.

Second Supplemental Questionnaire response.


Next, the conclusion that KHC failed to provide requested information, in that it "did not consult the Department on [the submission of surrogate data], and did not explain its omission of quantity or cost data until its April 13, 1999 addendum . . . where it mentioned in passing that the models were not produced during the POR," Final Results, 64 Fed. Reg. at 69,489, is not in accord with the evidence now on the record. Following receipt of the Second Supplemental Questionnaire, KHC's counsel sought a meeting with Commerce officials and, on March 23, 1999, such meeting took place. (Foster Aff. at ¶ 2.) At that time KHC's counsel consulted with Commerce officials about the missing data, explained to them why the data had not been provided, and sought guidance from them as to how to comply with the data request. (See id. at ¶¶ 4–5.) Moreover, Commerce's further contention that KHC failed to comply with statutory and regulatory guidelines is also not in accordance with the record. In support of this conclusion Commerce stated:

> KHC chose to ignore both the instructions in the questionnaire . . .
> and basic statutory guidelines: [19 U.S.C. § 1677m(c)(1)] requires
> that an interested party promptly notify the Department if it is
> unable to submit information in the form and manner requested,
> and that it provide a "full explanation and suggested alternate
> forms" in which it is able to provide the information. KHC
> provided no such notification or explanation.

Final Results, 64 Fed. Reg. at 69,490. The record, however, shows that KHC, after receiving the Second Supplemental Questionnaire—which for the first time alerted it to the nature its response's deficiencies—promptly notified Commerce that it needed clarification of the instructions and was having difficulty providing the requested information. (Foster Aff. at ¶ 4.)

KHC also explained why it had not previously supplied such data, and suggested an arguably reasonable means for completing the COP and CV databases with surrogate data. (Id. at ¶ 5.)

Therefore, because Commerce's findings in the Final Results are not based on the evidence on the record, its determination that the use of facts available was warranted as to KHC in the Final Results is not supported by substantial evidence.

## CONCLUSION

The court remands this action so that Commerce may conduct further proceedings in conformity with this opinion, including consulting with KHC to develop an acceptable method for providing missing production quantity data for KHC's COP and CV databases. Such remand results are due within ninety days from the date of this opinion. KHC shall have thirty days thereafter within which to file comments and Commerce may reply to any such comments within eleven days of their filing.

_____
                                        Richard K. Eaton

Dated: May 30, 2002
          New York, New York